So Ordered.

Dated: February 20, 2024



G. Michael Halfenger
Chief United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

Kevin C Williams,  Case No. 11-24658-gmh
 Chapter 13
Debtor.

Kevin C Williams,

Plaintiff, Adv. Proc. No. 11-02527-gmh

v.

City of Milwaukee City Clerk,

Defendant.

**DECISION AND ORDER**

I

In April 2011 plaintiff-debtor Kevin Williams filed a chapter 13 case (case number 11-24658 (the "2011 Bankruptcy Case")) and he also filed adversary proceeding number 11-02527 against the City of Milwaukee (the "Adversary Proceeding"). The

court closed the Adversary Proceeding in 2017 after the district court affirmed the entry of a 2015 judgment in his favor and closed the 2011 Bankruptcy Case in 2018 after he completed his plan, received a discharge, and his case was fully administered.

Beginning in September 2022, Williams, now pro se, filed numerous documents and correspondence with the court seeking what appears to be relief from orders entered in the Adversary Proceeding, which in turn potentially implicate the administration of the 2011 Bankruptcy Case. A review of the extensive proceedings in the Adversary Proceeding and, to a lesser extent, the 2011 Bankruptcy Case is necessary to understand Williams's requests for additional relief.

A

Before Williams filed his chapter 13 case in 2011, he owned a rental property located at 3200–3210 North Sherman Boulevard in Milwaukee, Wisconsin (the "Property"). ECF No. 19, at 3; ECF No. 50, at 7.[1] The City of Milwaukee obtained title to the Property in a tax foreclosure proceeding in July 2010, within a year before Williams filed the 2011 Bankruptcy Case. ECF No. 9-2, at 2; ECF No. 19, at 3. In July 2011 Williams commenced the Adversary Proceeding against the City alleging that the transfer of the Property to the City was avoidable pursuant to section 548 of the Bankruptcy Code, 11 U.S.C. §548, because the City took the Property in exchange for property tax relief that was not reasonably equivalent to the Property's value. ECF No. 1. The Adversary Proceeding involved the same legal issue as two other then-pending adversary proceedings (*Campbell v. City of Milwaukee*, Adv. Proc. No. 11-02561, and *Gillespie v. City of Milwaukee*, Adv. Proc. No. 11-02597), and, at the suggestion of the parties, then-Chief Bankruptcy Judge Pepper, who was presiding over all three proceedings, set a consolidated briefing schedule. ECF No. 8.

---

1. All record citations ("ECF No.") are to the court's electronic docket in the Adversary Proceeding, No. 11-02527, unless otherwise indicated.

In May 2012 the bankruptcy court entered summary judgment in the debtors' favor against the City. ECF No. 26. The combined order, which the court entered in each of the three proceedings, ruled that the tax foreclosures were fraudulent transfers pursuant to section 548, rejecting the City's contention that "a 'strict foreclosure' tax lien foreclosure proceeding that does not involve any competitively[] bid sale procedure suffices to establish 'reasonably equivalent value' for the purposes of §548(a)(1)(B)." ECF No. 26, at 19. The order avoided the transfers in all three cases and directed the City to return title of the properties to the debtors. *Id.* at 20.

The City appealed to the district court. And in March 2013 the district court remanded the case to the bankruptcy court to determine whether, for each of the plaintiffs' properties, the extinguishment of the delinquent tax debts through the tax foreclosures constituted reasonably equivalent value. ECF No. 44.

On remand, the bankruptcy court held an evidentiary hearing in the consolidated proceedings in August 2013. ECF No. 51. The court found that the reasonably equivalent value of each of the properties subject to the tax foreclosures "far exceeded the amount [of taxes] owed [to] the City" and thus the transfer of the title of those properties to the City did not represent reasonably equivalent value. ECF No. 51, at 2-3. After the court concluded that the tax foreclosures in each proceeding were fraudulent transfers, it again entered a final order and judgment avoiding each of the transfers. ECF Nos. 51, 54 & 55.

B

1

Although the court entered an order avoiding the transfers, Williams argued that he had a claim for damages against the City under §550(a) of the Bankruptcy Code,

11 U.S.C. §550(a).[2] ECF No. 51 at 3. Williams, through counsel, alleged "[t]hat as a result of negligence by the City in failing to maintain, safeguard and protect the [P]roperty, the [Property] appears to have been vandalized and as a result the value of the [Property] is significantly less than its value was at the time the transfer occurred." ECF No. 49, at 2. He further alleged that the Property had been an income-producing property generating rents "totaling approximately $2,000 per month" before title was taken by the City, but "[t]hat through the City's negligence and mismanagement of the [P]roperty the City has failed to collect rents and the [P]roperty is either vacant or abandoned and boarded up." *Id.* Williams asserted that he was "entitled to receive lost rents for the period of time from the date of the transfer to the date of the actual return of possession of the premises in tenantable condition to [Williams]." *Id.* He requested that the bankruptcy court order the City to return title of the Property to him **and** that the court award him "money damages against the City for the lost rents, diminished value and costs of repairing the damage to the [P]roperty**, or, alternatively, Order that**

---

2. After the district court remanded the proceedings to the bankruptcy court for a determination of the properties' reasonably equivalent value, the City stated that "an evidentiary hearing [regarding reasonably equivalent value] might not be necessary at all, because the City planned to file a motion in circuit court to vacate the foreclosure judgments and reinstate fee simple title to all three debtors." ECF No. 47, at 1. The attorneys for all the plaintiffs objected and "argued that their clients had damages claims against the City." *Id.* Thereafter the Campbells and Williams (who were represented by the same counsel) filed a joint motion for determination of damages, but the Campbells did not request the same relief as Williams. Williams contended that a "simple return of property is not an appropriate remedy as the property transferred has been severely depleted and Mr. Williams has been deprived of the collection of rents from the property". ECF No. 50, at 7. Instead of similarly arguing for damages, the Campbells requested that the City be required to deed the property back to them, rather than simply be allowed to vacate the foreclosure judgment. *Id.* They explained their reasoning as follows: "In the Campbell transfer, the Campbell family has remained in the foreclosed property and maintained it as if they still owned it, preventing diminishment of the estate, therefore, the Campbell Debtors' Bankruptcy Estate can be made whole by receipt of a deed for the property from the City." *Id.*

**the City pay [him] the value of the [P]roperty less the value of the unpaid taxes at the time of the transfer**". *Id.* at 3 (emphasis added).

After considering further briefing on Williams's request for damages, the court announced an oral ruling on July 22, 2014, that was summarized in a July 28, 2014 court minute order. The court concluded as follows:

> Because §550 itself did not expressly provide for the award of damages, and because at least one case had pointed out that awarding damages would penalize otherwise lawful government foreclosure actions, **the Court held that it could not, and would not, award damages over and above either return of the property or return of the property's value to the debtors.** The Court noted that this did not prohibit the debtors from seeking damages in other fora, under other, non-bankruptcy law. It stated simply that it did not find in the Code any authority for it to award damages in the bankruptcy context.

ECF No. 67, at 2 (emphasis added). After the court concluded that it did not have authority to award Williams damages under §550, "counsel for [] Williams reminded the Court[, at the July 22, 2014 hearing,] that [he] actually had requested alternative relief—either return of the property and damages, **but in the alternative, return of the value of the property in the event the Court ruled that it could not award damages**". *Id.* at 3 (emphasis added). Williams's counsel then requested leave to present further argument and evidence "regarding why Mr. Williams'[s] case represented the type of situation in which the return of the value of the property, instead of the return of the property itself, was the more equitable remedy under §550." *Id.* at 3. Over the City's objection, the court allowed Williams to present additional evidence and argument regarding why the court should order the City to pay him an amount equal to the Property's value when the City took the Property four years earlier, rather than simply returning the Property itself. ECF Nos. 70-72, 75, 80, 82-83, 87, 95 & 97-98.

After considering further argument and evidence, the court ultimately ruled that Williams was entitled to a monetary judgment based on the Property's value at the time

the City took title to it, a remedy he elected in lieu of the Property's return. The court ordered the City to pay $133,481.49 to the chapter 13 trustee, in accordance with Williams's confirmed chapter 13 plan, stating:

> IT IS ORDERED that the clerk is directed to enter judgment against defendant City of Milwaukee in the amount of $133,481.49 in favor of plaintiff Kevin Williams. Plaintiff shall pay the judgment amount to the chapter 13 trustee in accordance with the terms of his confirmed chapter 13 plan. To the extent that the plan requires Williams to pay the entire recovery to the trustee, he must pay the amount subject to exemption to the trustee unless and until he confirms a modified plan allowing him to retain the exempted amount (regardless of anything to the contrary in the December 9, 2015, oral ruling).

ECF No. 103, at 1-2 & 105 at 2-3. The bankruptcy court entered judgment on December 11, 2015. ECF No. 105.

The City timely appealed. ECF Nos. 109 & 111. In October 2016, while that appeal was pending, the debtor moved to modify his confirmed chapter 13 plan in the 2011 Bankruptcy Case. See 2011 Bankruptcy Case, ECF Nos. 15, 63, 69, & 164. The modified plan, which was confirmed by the court in November 2016, provided in part as follows:

> 2. The debtor shall contribute 100% of the non-exempt net proceeds from any recovery against the City of Milwaukee. This amount is in addition to the periodic plan payments made by the debtor or any other payments made by the debtor to the Trustee as required by the term of this plan or the order confirming plan.
>
> 3. That after any recovery from the City of Milwaukee, the debtor shall be allowed to retain the sum of $5,000 representing his allowed exemption from the amount prior to turn over of the net proceeds to the Trustee. In the event the proceeds of any recovery are paid directly to the Trustee, the Trustee shall pay the debtor $5,000 representing his allowed exemption on the recovery.

2011 Bankruptcy Case, ECF No. 164, at 3, & No. 169.

On February 28, 2017, the district court affirmed. ECF No. 132. After the district court returned the record on March 1, 2017, this court closed the adversary proceeding.

2

On June 26, 2017, the trustee filed a notice that Williams had completed all payments under his confirmed plan, the principal requirement for discharge under section 1328 of the Bankruptcy Code, 11 U.S.C. §1328(a). The court granted Williams a discharge on June 27, 2017. See 2011 Bankruptcy Case, ECF Nos. 206 & 207.

The chapter 13 trustee subsequently filed her final report and account, stating that she received total payments from the debtor of $201,494.48. See 2011 Bankruptcy Case, ECF No. 217, at 2. The final report also states that the trustee retained $10,047.59 for her compensation and expenses and distributed the remainder as follows: (1) $107,878.07 to Williams's bankruptcy attorney for approved attorney's fees and costs and (2) $83,568.82 to creditors with allowed claims provided for by Williams's chapter 13 plan. See 2011 Bankruptcy Case, ECF No. 217. On June 8, 2018, the court approved the trustee's final account (to which no one had objected), discharged the chapter 13 trustee, and closed the case. See 2011 Bankruptcy Case, ECF No. 219.

II

A

1

Several years after this court closed both the Adversary Proceeding and the 2011 Bankruptcy Case, Williams began a prolonged pro se campaign of filing correspondence relating to the Adversary Proceeding.[3] He filed the first of these letters on September 30, 2022. ECF No. 135. That letter, however, did not request any relief,

---

3. Many of the documents that Williams filed also appear to relate to events in his other bankruptcy cases and other property (including real and personal property) that were not at issue in or related to the Adversary Proceeding. The court has scrutinized the documents that Williams filed. Those not addressed were found to be irrelevant.

and the court entered an order on October 13, 2022, explaining that it would take no further action on it for that reason. ECF No. 136. He filed another letter on November 15, 2022, but that letter also failed to explain what relief he wanted the court to award. ECF No. 138. The court scheduled a December 15, 2022 hearing to afford Williams an opportunity to elaborate on his correspondence and explain both the relief he was seeking and the basis for that relief. ECF No. 139 & 143.

Williams filed additional documents on December 9, 2022, and he presented still more documents at the December 15 hearing. ECF Nos. 142-43. At the December 15 hearing Williams told the court he was seeking to retain counsel to assist him in further proceedings and, at Williams's request, the court adjourned the hearing to May 24, 2023. ECF No. 143, at 1. On May 24 Williams again appeared without counsel. ECF No. 148. He again filed more documents—some before the May 24, 2023 hearing and others he sought to file by presenting them to the court during the hearing. ECF Nos. 145 & 147. He again asked for several more months to secure counsel. After the May 24, 2023 hearing, "the court set a deadline of December 15, 2023, for the plaintiff[-debtor] to file a motion requesting all relief he seeks in adversary proceeding No. 11-02527, including any relief from the judgment entered December 11, 2015." ECF No. 148, at 1. Since then, Williams has filed an assortment of documents including one titled "Motion to Refund Damages and Fees from #11-02527" and another labeled "Motion in Accordance w/ Case #11-02527 . . . Refund of All Attorney Fees, Court Costs & Damages in Accordance with #11-02527". ECF Nos. 152, at 3-4 & 156, at 1.

Williams asks the court to order the City return the Property, pay him damages—some of which are to compensate him for alleged injuries relating to the City's taking of the Property and some of which are to compensate him for alleged injuries that are seemingly unrelated—and to pay his attorney's fees that he incurred in the Adversary Proceeding and the 2011 Bankruptcy Case. These requests are largely

based on a misunderstanding of the court's rulings in the Adversary Proceeding and are, in all events, legally foreclosed by the judgment in that proceeding.

As explained above, this court initially entered a judgment in the Adversary Proceeding (as well as in *Campbell* and *Gillespie*) in May 2012, that avoided the transfers of the properties the City took through tax foreclosures, pursuant to section 548 of the Bankruptcy Code, and ordered the City to effectuate the return of the transferred properties to Williams and the other plaintiffs. The City appealed that judgment to the district court.

After the district court's remand, Williams requested that the court order the City to either (1) return title of the Property to him **and** order "money damages against the City for the lost rents, diminished value and costs of repairing the damage to the [P]roperty," or, *in the alternative*, (2) "pay [ ] Williams the value of the [P]roperty less the value of the unpaid taxes at the time of the transfer". ECF No. 49, at 3; see also ECF No. 50, at 3. After briefing and a hearing, the court *denied* Williams's request for consequential damages—damages for lost rents, loss of value, and costs of repair of the Property—concluding that it "could not, and would not, award damages over and above either return of the [P]roperty or return of the [P]roperty's value" to Williams because section 550, which governs the relief available for transfers avoided under section 548, did not provide it with authority to do so. ECF No. 67, at 2. Williams did not appeal that ruling.

After the court denied Williams's request for consequential damages under section 550, Williams pursued the alternative relief he had requested—"the return of the value of the [P]roperty, instead of the return of the [P]roperty itself". *Id.* at 3. The court ultimately *agreed* with Williams that the appropriate remedy was an award of the *value of the Property*, rather than the return of the Property, and it ordered the entry of judgment "against the City of Milwaukee in the amount of $133,481.49 in favor of plaintiff Kevin Williams"; it further ordered Williams to "pay the judgment amount to

the chapter 13 trustee in accordance with the terms of his confirmed chapter 13 plan."[4] ECF No. 103, at 1-2 & 105 at 2-3.

The City again appealed to the district court. ECF No. 111. Williams did not cross-appeal. This district court affirmed the judgment in February 2017, and the record was returned to the bankruptcy court in March 2017. ECF No. 132. Because neither party pursued further appellate relief, the district court's 2017 ruling concluded the Adversary Proceeding.

2

On June 27, 2017, after the chapter 13 trustee reported that she had received all payments required by Williams's debt adjustment plan in the 2011 Bankruptcy Case, the court granted him a discharge pursuant to section 1328(a) of the Bankruptcy Code. ECF Nos 206 & 207.[5]

In November 2017, Williams filed another chapter 13 case; the court dismissed that case in April 2019 because he failed to make payments required by the confirmed plan. Case No. 17-31103, ECF No. 68. In November 2019, Williams filed again, and the court dismissed that chapter 13 case the following month, December 2019, because Williams failed to file a chapter 13 plan by the court-ordered deadline. Case No. 19-

---

4. In his pro se correspondence, Williams complains that the other debtor-plaintiffs in the consolidated adversary proceedings, Gillespie and the Campbells, "received their property back", stating that he doesn't understand why he did not also receive that same relief. ECF No. 156, at 3. As explained above, Williams did not get that relief because, after his request for a return of the Property and damages was denied, he elected (under section 550) to seek a monetary award equal to the Property's *value*, whereas the plaintiffs in *Campbell* and *Gillespie* elected to receive title to their properties rather than the monetary value of those properties. See *Campbell v. City of Milwaukee*, Adv. Proc. No. 11-02561, at ECF Nos. 55, 60, 69, & 70; see also *Gillespie v. City of Milwaukee*, Adv. Proc. No. 11-02597, ECF Nos. 43, 47, & 57.

5. As explained above, following the district court's ruling the chapter 13 trustee reported in the 2011 Bankruptcy Case that she received all payments (including, presumptively, the Adversary Proceeding judgment amount) and distributed those funds to the claimants identified in her final account. No one objected to the final account, and the court entered an order approving it in 2018.

31010, ECF No. 20. In February 2020 Williams filed another chapter 13 case; the court dismissed that case in October 2020 because he failed to provide the trustee with requested documents, including copies of his 2017 and 2019 income tax returns, and failed to file a confirmable plan. Case No. 20-20917, ECF Nos. 66 & 70. And, in March 2021, Williams filed his most recent chapter 13 case; the court dismissed that case in October 2022 because Williams failed to file a modified plan by the court-ordered deadline of August 29, 2022. Case No. 21-21511, ECF Nos. 201, 211, & 214.

B

As noted above, starting in September 2022, Williams filed a series of correspondence and other documents to seek new relief in the Adversary Proceeding that had concluded more than five years earlier. He contends in part that the court's judgment awarding him the value of the Property should also have ordered the City to return the Property and alleges that this court should award him damages for harms the City has subsequently caused. He writes, for example,

> "Hear [sic] is a number of documents that show you approved of the Judgement [sic] for the Plaintiff in [the Adversary Proceeding]! Yet, I have received a different outcome than other plaintiff[.] Retaliations from City include destruction of this front door! A service I was charged for! Council voted 15-0 to provide damage, [sic] However I am yet too [sic] be compensated! Again if other plaintiff get homes back, then I should too, their remedy under the law is no different!

ECF No. 151, at 1 (capitalization altered). In addition to seeking to relitigate return of the Property, he alleges new claims to damages and an award of his attorney's fees. His most recent filing appears to state his complete litany of requested relief and the purported reasons for seeking that relief:

> Refund of All Attorney Fees, Court Costs & Damages In Accordance with #11-02527!

Your Honor as I had stated before I had not received proper compensation for the damages associated with case #11-02527 which I have received a judgement in accordance with #11-02527! Per Common Council, damages we're [sic] to be provided 07/2017 (15–0) vote! Damages too [sic] include attorney fees ($132,000), federal court costs/Trustee payments, lost rent ($315,000.00), pro[]perty or value of fraudulently seized assets on 3202-3210 N. Sherman & 3801-3803 W. Douglas Ave, claim filed with City Clerk for 2.5 million!

City is & was late in filing response paperwork, also I don't believe Attorney Spencer should be working on my cases any more having been removed from my case in 2023![6] All damages including costs to file cases post 2017 should be refunded! Layout of estimate of damages continued!

12-7-2023    Estimate of Damages

A.) Attorney Fees; ($132,000.00) + Attorney Esser[7] & other attorneys fees over $132,000+

B.) Court Costs: Fees, costs in accordance with 2017 case $(2,00,000 [sic]) my cases post 2017 we're [sic] not handled properly fees & trustee payments refunded!

C.) Lost Rent: Judge ordered that I receive $2,000.00 per month in lost rent in accordance w/# 11;02527 [sic] from 10/1/2010 — present $318,000.00

D.) Current Tenants: Not receiving rent for property @ 1987 W. Melvina, 4475 N. 22nd, 3801 W. Douglas Ave. City staff w/ agencies have withheld my rent from current tenants CSDC / community advocates)!

---

6.    A September 28, 2023 order required the City to respond to Williams's September 22, 2023 filing by no later than October 31, 2023. ECF No. 152. The City filed a response on October 31, 2023, which was accompanied by proof of service by mail on that date. ECF No. 155. While Williams presumably *received* that response after October 31, the City's response was timely.

7.    Mr. Esser was Williams's counsel in the Adversary Proceeding and the 2011 Bankruptcy Case.

> Property Damages:/ Stolen Property Damages or Stolen Property like vehicles 1986 Mercedes Benz 420 SEL, 1965 Ford Thunderbird convertible; 1974 Cadillac Eldorado!
>
> Valuation: If Property Not Going to Be Returned / Current Value @ Time of Seizure Douglas Ave ($100,000.00) / Sherman Blvd. $200,000.00
>
> Claim filed with City Clerk: Filed a claim with City Clerk for 2.5 million in damages these damages should be paid along with other court ordered damages per motion of court #11-02527.

ECF No. 156, at 2 (some capitalization altered). In the same filing, Williams offers the following justifications for the relief he requests:

> As you can see, from (100) pages of documents that we're [sic] provided the city of Milwaukee has NOT properly EXECUTED the payment for the plaintiff in Case #11-02527. Again, in case of Kevin Williams Vs. City of Milwaukee case #11-02527 and other plaintiff cases Judge Pepper asked for property to be returned to plaintiff! As the Primary plaintiff, in this matter my property at 3202-3210 N. Sherman Blvd. was to be returned. In addition to the home being returned, the City Common Council RULED I should receive damages associated with this matter.
>
> In a case of this type, damages should include attorney fees, Rent lost @$2,000.00 per month decision of Judge Pamela Pepper. In addition to lost rent, attorney fees and damages to be determined NECESSARY to bring home on N. Sherman Blvd. back to a rentable and habitable condition. Other Plaintiff like Rita Gillespie and Mr. and Mrs. Campbell have received their property back. WHY, am I still trying to be awarded the property and damages with interests which was awarded by federal court.
>
> Other Retaliations: When this decision was REACHED and common council VOTED in FAVOR of damages in (07/2017)[,] I thought I would have a bridge of Sustainability from the Federal Court and had tried to FILE cases POST (2017decision) that would provide my property back and [ ] payout for the damages and delays for my Rent and monthly income payments LOST. The court and it's [sic] officials INSTEAD of providing SUSTAINABILITY provided trouble. Instead of providing damages and interest from back rent the city and it's [sic] officials WENT after OTHER

property WHICH belonged to ME to SEIZE other assets and to eventually MAKE me tenant FREE and HOMELESS. City, county, eastern district and local attorney's [sic] LIKE esser LAW SAW that my property at 3801-3803 W. Douglas was seized and title changed in (03/2022).

This property WAS paid OUT by the federal court in Case #11-024658 & I should be the retainer of the title. City has with-held thousands in RENT owned at W. Melvina St., N. 22nd. W. Douglas and N. 2nd Street with the assistance of city social service agencies SDC and community advocates. Claiming, "I'm NOT the properties OWNERS"? Damages to Include: all attorney fees, lost rent, social service fines and fees and overdue debt from properties. AS judge Pepper said provide ME a fresh start with my HOME back like OTHER plaintiff received.

ECF No. 156, at 3.

C

This long-closed Adversary Proceeding is not a suitable vehicle for any of the relief Williams seeks. As explained above, this court entered judgment in Williams's favor and against the City. That judgment awarded him $133,481.49, the value of his Property at the time the City took it by tax foreclosure, rather than ordering the City to return the Property to him. The court awarded that relief under section 550(a) at Williams's urging.

Williams cannot relitigate his choice of section 550(a) remedies or pursue other relief in this adversary proceeding relating to the City's taking of the Property. He is bound by the judgment entered in 2015 that awarded him the value of the Property; any other claim for relief relating to the Property he might have had is "merged" in that judgment: "When the plaintiff obtains a judgment in his favor, his claim 'merges' in the judgment; he may seek no further relief on that claim in a separate action." *Kaspar Wire Works, Inc. v. Leco Eng'g & Mach., Inc.*, 575 F.2d 530, 535 (5th Cir. 1978).

Williams thus cannot pursue relief relating to the City's taking of the Property unless he can demonstrate that the court should modify or vacate the 2015 judgment.

Similarly, he cannot pursue his allegations that the trustee in the 2011 Bankruptcy Case did not distribute funds in accordance with his chapter 13 plan without obtaining relief from the June 8, 2018 order approving the trustee's final account and closing the case.[8] See 2011 Bankruptcy Case, ECF No. 219.

1

Federal Rule of Civil Procedure 60(b) (incorporated into these proceedings by Federal Rule of Bankruptcy Procedure 9024) provides the sole avenue for seeking relief from final judgments and orders, such as the Adversary Proceeding judgment and the 2011 Bankruptcy Case closing order. Rule 60(b) states:

> On motion and just terms, the court may relieve a party . . . from a final judgment, order, or proceeding for the following reasons:
> (1) Mistake, inadvertence, surprise, or excusable neglect;
> (2) Newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> (3) Fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> (4) The judgment is void;
> (5) The judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated, or applying it prospectively is no longer equitable; or
> (6) Any other reason that justifies relief.

---

8. For example, Williams seeks the return of payments made to the chapter 13 trustee and asserts that the chapter 13 trustee did not make payments to "Seterus" in the 2011 Bankruptcy Case. ECF No. 145, at 1. He has not identified a factual basis for his suggestion that the trustee failed to make distributions that were required by the confirmed chapter 13 plan. He also requests "a full accounting of all debts paid by [the chapter 13 trustee] in the [2011 Bankruptcy Case]". ECF No. 145, at 1. But the trustee filed an accounting of all debts that were paid in the case as part of her final report and account on May 1, 2018. 2011 Bankruptcy Case, ECF No. 217. The court approved that final report on June 8, 2018, before closing the case. 2011 Bankruptcy Case, ECF No. 219.

Fed. R. Civ. P. 60(b). A party filing a Rule 60(b) motion must file it "within a reasonable time—and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order". Fed. R. Civ. P. 60(c)(1).

Williams first requested additional relief in the Adversary Proceeding (potentially implicating the 2011 Bankruptcy Case's orders approving the trustee's final account and closing the case) in September 2022, far more than a year after the district court affirmed the Adversary Proceeding judgment in 2017 and this court closed the bankruptcy case in 2018. As a result, Rule 60(b)(1)'s provision for relief based on mistake or excusable neglect is unavailable. See *Kemp v. United States*, 596 U.S. 528, 539 (2022). And because Williams's request for relief all seem to depend on his allegations that the court, Williams's counsel, or the trustee made mistakes, his request for relief is "cognizable under Rule 60(b)(1), subject to a 1-year limitations period, and, therefore, untimely." *Id.*

What is more, while Rule 60(b)(4), (5), and (6) are not subject to the one-year limitation bar, none of Williams's purported grounds for seeking additional relief implicate any of these provisions. Rule 60(b)(4) authorizes relief from void judgments. But that "rule 'is construed very narrowly and a judgment is normally void only if the rendering court lacked either subject matter jurisdiction or jurisdiction over the parties.'" *In re Whitney-Forbes, Inc.*, 770 F.2d 692, 696 (7th Cir. 1985) (quoting *Planet Corp. v. Sullivan*, 702 F.2d 123, 125 n.2 (7th Cir.1983)). Williams has not and could not contend that the bankruptcy court lacked jurisdiction to enter the judgment in the Adversary Proceeding or any order in his 2011 Bankruptcy Case. Nor has he plausibly suggested that exceptional circumstances warrant voiding the judgment—another Rule 60(b)(4) requirement, which necessitates finding the order to be "inconsistent with due process" or to have "involved a '"plain usurpation of power."'" *Id.* at 696-97 (quoting *Margoles v. Johns*, 660 F.2d 291, 295 (7th Cir.1981)). Rule 60(b)(5), which allows relief when a judgment has been satisfied or is no longer equitable, cannot aid Williams because,

rather than contending that the judgment is satisfied, he contends that the City has failed to pay him additional damages and attorney's fees that the court should have awarded. "Finally, Rule 60(b)(6), [which] provides a catchall for 'any other reason that justifies relief'[,] . . . is available only when Rules 60(b)(1) through (b)(5) are inapplicable. Even then, '"extraordinary circumstances"' must justify reopening." *Kemp*, 596 U.S. at 533 (quoting *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 863, n.11 (1988)). The availability of Rule 60(b)(1) and Williams's failure to raise on appeal or otherwise his new contention that he was entitled to an award of both the value of the Property and its return shows a lack of "extraordinary circumstances" that renders Rule 60(b)(6) unavailable as a means of vacating or modifying either the Adversary Proceeding judgment or any order in the 2011 Bankruptcy Case.[9]

2

Rule 60(b) thus does not afford Williams a means of enlarging the relief he obtained in the Adversary Proceeding—including his requests for return of the Property, attorney's fees, court costs, and rent from the Property—or of vacating the final order in the 2011 Bankruptcy Case to pursue a refund of payments made to, or distributions made by, the trustee. At least some of Williams's other alleged damages may not be foreclosed by the final orders at issue here—for example, rent related to other properties, such as the properties on Melvina, N. 22nd Street, and W. Douglas

---

9. Additionally, nothing Williams has alleged would plausibly justify granting relief under Rule 60(b), even if he had made a timely request. He mainly contends that the City should return the Property to him, pay for lost rent, repairs, and his attorney's fees. There is no basis for any of that: He chose to recover "the value of [the] property", 11 U.S.C. §550(a), rather than the Property itself. This court denied his request for an award of damages other than the value of his property, a ruling he did not appeal, and nothing in the Bankruptcy Code would entitle him to recover his attorney's fees. *Gouveia v. Cahillane (In re Cahillane)*, 408 B.R. 175, 214 (Bankr. N.D. Ind. 2009) ("Neither § 548 nor § 550 of the Bankruptcy Code specifically authorize an award of attorneys' fees to a prevailing party. In bankruptcy cases, the 'American Rule' applies, which provides that in cases that are based upon or involve federal law, attorneys' fees are not allowable absent a statutory basis or enforceable contract between the parties.").

Ave., as well as his allegations of stolen cars and other property damage. Williams's filings do not allege details that explain the bases for these claims. Nor do his filings explain how those claims have any bearing on his 2011 Bankruptcy Case or the related Adversary Proceeding, which involved only the fraudulent transfer of his property at 3200–3210 North Sherman Boulevard. Regardless, this court lacks jurisdiction over these additional claims against the City.

To the extent Williams has claims against the City that are not precluded by the Adversary Proceeding judgment, no jurisdiction over those claims can be founded on the closed 2011 Bankruptcy Case. For this court to have jurisdiction, those claims must arise under the Bankruptcy Code, arise in the 2011 Bankruptcy Case, or relate to that case. See 28 U.S.C. §1334(b); see also *id.* §157(b). If Williams has claims against the City that are not foreclosed by the judgment in the Adversary Proceeding and the final orders in the 2011 Bankruptcy Case, those claims do not arise under the Bankruptcy Code, do not arise in the 2011 Bankruptcy Case, and are not related to the 2011 Bankruptcy Case. This court, therefore, lacks jurisdiction over them.

Moreover, if this court has jurisdiction over any claims Williams has against the City, the court abstains from adjudicating those claims under section 1334(c)(1) of title 28 of the United States Code. At this point, any claims arising from Williams's allegations that the City took or damaged his real and personal property must be decided under nonbankruptcy law. Given that the Adversary Proceeding and the 2011 Bankruptcy Case have been closed for several years, the interest of justice and comity do not favor this court undertaking an adjudication of any such claims, even if it otherwise has jurisdiction to do so. The court also abstains from adjudicating any claim that the City failed to pay the Adversary Proceeding judgment. If Williams can show that the City has not paid that judgment, he may pursue collection in state court.

III

For these reasons, IT IS ORDERED that Williams's request that the court award him additional relief in this long-closed Adversary Proceeding is denied.

# # # # #